Argued and submitted March 20, goal and rules held valid April 24, 1991

## OREGONIANS IN ACTION,
*Petitioner,*

*v.*

## LAND CONSERVATION AND
## DEVELOPMENT COMMISSION,
*Respondent,*

*and*

## 1000 FRIENDS OF OREGON,
*Intervenor - Respondent.*

(1-1990; CA A64082)

809 P2d 718

David B. Smith, Tigard, argued the cause and filed the briefs for petitioner.

Michael D. Reynolds, Assistant Solicitor General, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and John T. Bagg, Assistant Attorney General, Salem.

Neil S. Kagan, Portland, argued the cause for intervenor - respondent. With him on the brief was Robert L. Liberty, Portland.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

**BUTTLER, P. J.**

In this proceeding under ORS 183.400, petitioner challenges the validity of LCDC's amendments to Goal 4 and its adoption of certain rules, codified in OAR Chapter 660, Division 6, that implement the amended goal.[1] We hold that the amended goal and rules are valid.

■ Petitioner first argues that LCDC's "notice of proposed rulemaking" did not comply with the requirement of ORS 183.335(2)(b)(B) for a "statement of the need for the rule and a statement of how the rule is intended to meet the need." LCDC responds, first, that, although the requirement of that statute applies to the challenged rules, it does not apply to the goal amendment. Rather, the procedural requirements for goal adoption and amendment are contained in ORS Chapter 197. We need not, however, decide that question.[2] A single notice was filed for both the goal amendment and the rules adoption, and petitioner's argument does not challenge the adequacy of the notice for any reason that is peculiar to the goal amendment.

The statement and finding of need in LCDC's notice recites:

"1. The 1985 Legislature adopted legislation which requires the Commission to consider rule or goal amendments or legislative recommendations which provide a practical means to identify secondary resource lands and allow specified uses of these lands. The 1987 legislature required the adoption of a definition of secondary resource lands and the uses permitted on such lands by July 31, 1988, and its submission to the Joint Legislative Committee on Land Use (JLCLU).

"2. In March 1988 the Oregon Supreme Court overturned the Commission's acknowledgment of Lane County's

---

[1] The question of whether a challenge to a statewide planning goal may be brought under ORS 183.400 appears to have been answered in *1000 Friends v. LCDC,* 292 Or 735, 642 P2d 1158 (1982), an ORS 183.400 proceeding in which the petitioner challenged the validity of an amendment to Goal 14. Although the court did not address the jurisdictional question expressly, it noted that "the goals are clearly rules within the meaning of ORS 183.310[(8)]," 292 Or at 737 n 1, and it proceeded to decide the issue presented.

[2] The question was also left open in *1000 Friends v. LCDC, supra,* 292 Or at 737 n 1.

comprehensive plan in part regarding the conservation of forest lands [*1000 Friends of Oregon v. LCDC (Lane Co.)*, 305 Or 384, 752 P2d 271 (1988)]. The court addressed several issues regarding the allowed uses under Goal 4, and standards applicable to the review and approval of forest and nonforest dwellings and to land divisions. The case requires significant redrafting of Goal 4.

"3.   The 1987 Legislature also adopted HB 3396 (Chapter 919, Oregon Laws 1987), which significantly changed the relationship between Goals 4 and 5 regarding the conservation of forest land and the authority of counties to regulate forest operations and auxiliary activities.

"4.   Based upon these legislative and judicial decisions, the Commission finds that there is a Statewide need under ORS 197.230(3) for these Goal and rule amendments."

Petitioner maintains that the statement describes a need, but does not address the means by which the proposed promulgations would meet the need. LCDC answers that the description of the means is implicit in the statement of the need and that

"the legislature and a court decision have required particular changes as identified in the notice, and the agency's method to meet the requirements is to adopt the changes the legislature and the court require. No further explanation of a means to achieve the need is necessary or even particularly informative."

We agree and reject petitioner's first assignment.

■       Petitioner raises one other assignment that pertains to asserted deficiencies in the rulemaking procedures. ORS 197.245 provides, in material part:

"Absent a compelling reason, [LCDC] shall not require a comprehensive plan, new or amended land use regulation or land use decision to be consistent with a new or amended goal until the time of the periodic review required under ORS 197.640 or one year after the date of adoption, whichever is later."

*See Oregonians in Action v. LCDC,* 103 Or App 35, 795 P2d 1098 (1990). LCDC made findings of compelling reasons and made the amended goal applicable immediately. The findings state that there are compelling reasons, *inter alia,* to bring land use practices into compliance with the legislative and judicial requirements, to prevent unregulated development

and to avert the risk of forest fire that development would present.

Petitioner contends that the notice of rulemaking was required to but did not state that findings of compelling reasons under ORS 197.245 would be made. Petitioner relies again on ORS 183.335(2)(b)(B) and on ORS 197.230(1) for the proposition that the notice had to contain that information. Its argument confuses the need for a rule or an amendment, which those statutes do require to be stated or found, with the compelling reasons for immediate application, to which ORS 197.245 applies. Neither of the statutes on which petitioner relies says anything about the latter, and we are aware of no other source of a requirement of the kind that petitioner hypothesizes.

■    Petitioner next makes *seriatim* contentions that none of LCDC's findings of compelling reasons demonstrate anything that can be regarded as compelling. Even assuming that it is our function to second-guess LCDC in the way that petitioner invites us to do, we conclude that LCDC has demonstrated compelling reasons within the meaning of ORS 197.245.

■    Petitioner also assigns error to the promulgation of the goal amendment and the rules on the ground that the statutory delegation to LCDC of authority to adopt goals and rules "contains inadequate standards to guide [LCDC's] exercise of its powers" and therefore violates Article III, section 1, of the Oregon Constitution. We rejected a materially similar improper delegation argument in *Meyer v. Lord,* 37 Or App 59, 586 P2d 367 (1978), *rev den* 286 Or 303 (1979), and we reject petitioner's argument as well. We do not agree with its suggestion that *Meyer* was wrongly decided. Insofar as petitioner's argument rests on statutes that were adopted since we decided *Meyer,* it is also without merit.

Petitioner argues in its remaining assignments that the amended goal and the rules give rise to regulatory takings in violation of the federal and state constitutions and, for analogous reasons, that they violate the Forest Practices Act (ORS 527.610 *et seq*) and the statutes pertaining to "conservation easements" (ORS 271.715 *et seq*). Those assignments cannot be decided in this proceeding. Amended Goal 4 and the implementing rules do not directly regulate the use of land.

Instead, they constitute directions to local governing bodies that they must adopt legislation and operational standards that regulate land and its use in ways that comply with the amended goal and rules.

LCDC's goals and rules are not self-executing. The actual regulation takes place through the local legislation that is enacted pursuant to them and is found to comply with them. The distinction is not one without a difference. Local comprehensive plans and land use regulations need not simply parrot LCDC's goals and rules; the local legislation is required to comply with them, but not to duplicate them. Axiomatically, there can be no regulatory taking before operational regulations exist or their precise substance is known.[3] Therefore, we do not reach petitioner's second, third and fourth assignments.

Goal and rules held valid.

---

[3] We do not imply that "regulatory takings" can only take the form of legislative requirements for or limitations on the use of private land. However, no other taking mechanism is suggested by petitioner or could exist here.